ON PETITION FOR REHEARING
HAVERFIELD, Judge.
This opinion is issued after petition for rehearing has been filed and argument heard thereon. Our prior opinion and judgment is withdrawn and this opinion is substituted therefor.
*853 In these consolidated interlocutory appeals respondent-appellants, City of North Miami Beach and its mayor David Lap-ham, seek review of the lower court’s orders; (1) holding applicable those building codes, ordinances, resolutions and regulations of the City of North Miami Beach in effect as of the date of the filing of the lawsuit, to-wit: July 17, 1969, and (2) requiring the issuance of a building permit to petitioner-appellee, Trebor Construction Corp.
The City of North Miami Beach code permits the R-3 multiple family residential use within both B-l and B-1AA zoning districts. In the case sub judice petitioner elected to take advantage of the R-3 multiple family residential use in property which was within a B-l and B-1AA zoning district in North Miami Beach.
As the result of an earlier appeal, see City Council, No. Miami Beach v. Trebor Const. Corp., Fla.App.1971, 254 So.2d 51, the circuit court on June 23, 1972 directed petitioner to submit its plans to the appropriate office at the City of North Miami Beach, and to hold an informal meeting with city officials for the purpose of defining and, if possible, resolving the areas of dispute regarding the proposed construction. The circuit court then held that the applicable building codes, ordinances and regulations pertaining to the subject matter of petitioner’s application were those that existed as of, and/or in effect as of, the date of the filing of the subject lawsuit, to-wit: July 17, 1969.
Subsequently, the parties were unable to resolve two major problems; (1) the permissible height of petitioner’s building, and (2)the number of parking spaces required. A hearing was held in the circuit court and the judge held that petitioner’s building was permitted to go to the maximum height of all structures in a B-l or B-1AA zoning district, and that parking requirements were to be determined from the R-3 multiple family residential zoning district.
As to the first point on appeal, we find the lower court to be correct in holding applicable the building codes, ordinances and resolutions that existed on July 17, 1969, the date of the filing of the subject lawsuit. It is well established in Florida that in a law action the right of a plaintiff to recover must be measured by the facts as they existed when the suit was instituted. Voges v. Ward, 98 Fla. 304, 123 So. 785 (1929). The same rule is applicable in equity proceedings. Meredith v. Long, 96 Fla. 719, 119 So. 114 (1928); Hasam Realty Corp. v. Dade County, Fla.App. 1965, 178 So.2d 747. The above rules were reaffirmed in City of Coral Gables v. Sakolsky, Fla.App.1968, 215 So.2d 329, wherein the City of Coral Gables was ordered to issue a building permit to Sakolsky.
We now turn to the second point on appeal, the requiring of the issuance of a building permit to petitioner-appellee, Tre-bor Construction. Petitioner-appellee wishes to use the R-3B zoning classification to build a seven (7) story multiple family dwelling in a B-l and B-1AA zoning district. The City of North Miami Beach code permits the R-3 multiple family residential use on property which is located within these two zoning districts, B-l and B-l A A.
The basic issue to be resolved in order to decide this point on appeal is the construction of Section 15 of North Miami Beach Ordinance #66-1, which regulates structures in R-3 zoning districts.[1]
*854 Petitioner-appellee contends that the zoning classifications, R-3A, B and C provided for in Ordinance #66-1, allow a building height to 15 stories. In response, the city-appellant argues that the zoning classifications of R-3A, B and C were never activated by the city council pursuant to Section 15 of Ordinance #66-1 and submitted an affidavit from the city clerk to substantiate its contention.
Section 15 reads as follows:
“Section 15: This Ordinance shall become effective when the various zoned districts are designated and approved by the Planning and Zoning Board and the City Council of the City of North Miami Beach.
“However, if the City Council of the City of North Miami Beach has not approved the various zoned districts within 90 days from the passage of this Ordinance, then any R-3 district shall come within the scope of this Ordinance and applicants shall comply mth the requirements of this Ordinance as to parking and setbacks pertaining to the height of the structure being applied for.” [Emphasis supplied]
In view of the fact that the basic R-3 classification has a height limitation of three (3) stories with a setback applicable thereto, the only construction we can give to this section is that it clearly intended that the classifications of R-3A, B and C become automatically effective within ninety (90) days from the date of adoption of the ordinance in absence of approval by the city council. In other words, we construe the ninety (90) day period provided for in the ordinance as an interval in which the North Miami Beach City Council was given an opportunity to review the classifications and either approve, modify, or amend them; however, in the absence of the council taking any affirmative action, these classifications (R-3A, B and C) become effective upon the expiration of the ninety (90) day period.
Therefore, in light of the above interpretation of Section 15 of Ordinance #66-1, petitioner-appellee must prevail and is permitted under the classification of R-3B zoning, Section 11 of Ordinance #66-1, to construct its seven (7) story multiple family dwelling. In addition to the height limitations, petitioner-appellee’s building plans must comply with all other restrictions contained in the R-3B zoning classification as well as the safety criteria of the South Florida Building Code. See City of North Miami v. Outrigger Club, Inc., Fla.App. 1973, 276 So.2d 124 (3 D.C.A. opinion filed February 8, 1973).
It follows then that regarding the question of the number of requisite parking spaces, we must look to the R-3B zoning classification which in turn leads us to Section 4 of Ordinance #66-1. That section requires for multi-dwelling structures 1]4 parking spaces for each unit. All such parking shall be off-street except on an 80 foot or greater right-of-way. Therefore, petitioner-appellee must provide 1]4 parking spaces for each unit. The proposed structure has 72 units and is on an 80 foot right-of-way. Thus, petitioner is required to have a minimum of 90 parking spaces: 17 on the street and 73 off-street.
Accordingly, if the trial judge determines that petitioner-appellee’s building plans comply with all of the requirements of the R-3B zoning classification and the safety criteria of the South Florida Building Code, then he should order that the City of North Miami Beach shall issue a building permit to the petitioner to construct a seven (7) story, 72-unit apartment dwelling with a minimum of 90 parking spaces.
It is so ordered.

Ordinance 66-1
I. “Section 1: Building Heights in R-3 Zoning:
No building or structure shall be erected or altered to a height exceeding three (3)stories.
Hs ifc J{< sk
“Section 10: Classification of RSA Zoning'. Multiple Structures from Four (4)to Six (6) Stories in Height'.
*854 “Section 11: Glassification of R-SB Zoning : Multiple Structures from Seven (7) to Nine (9) Stories in Height:

“Section 12: Glassification of R-SG Zoning: Multiple Structures from Ten (10) to Fifteen (15) Stories in Height.